UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MUSTAFA BULLE,<br>    Petitioner,<br><br>    v.<br><br>DAVID T. WESLING, Field Office Director of Enforcement and Removal Operations, Boston Field Office, Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW; MICHAEL NESSINGER, Warden of Wyatt Detention Facility,<br>    Respondents. | C.A. No. 26-cv-019-JJM-AEM |

MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., Chief Judge United States District Court

Mustafa Bulle, who is currently being held in the custody of Immigration and Customs Enforcement ("ICE"), brings this habeas petition under 28 U.S.C. § 2241. ECF No. 1. Mr. Bulle asserts that ICE violated its own regulations, as well as his Fifth Amendment Due Process rights, when it revoked his Order of Supervision ("OSUP") and re-detained him. *Id.* at 14-15. The Government objects to Mr. Bulle's petition, arguing that his detention is "presumptively reasonable" and justified

because ICE is "actively working to obtain travel papers" to remove Mr. Bulle from the United States. ECF No. 8 at 1.

For the reasons that follow, the Court GRANTS Mr. Bulle's petition and ORDERS his immediate release. ECF No. 1.

I. BACKGROUND

   A. Statutory and Regulatory Framework

"'The government's power to detain an immigrant must be grounded in a specific provision' of the Immigration and Nationality Act ('INA')." *Mavungo-Raymond v. Nessinger*, No. 26-cv-013-JJM-AEM, 2026 WL 161358, at *1 (D.R.I. Jan. 21, 2026) (quoting *Hechavarria v. Sessions*, 891 F.3d 49, 54 (2d Cir. 2018)).

Generally, when a noncitizen is ordered removed from the United States, the Department of Homeland Security ("DHS") "must secure the noncitizen's removal during a 90-day 'removal period.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting 8 U.S.C. § 1231(a)(1)(A)). Section 1231(a) of the INA provides that detention is mandatory during the removal period. *Johnson v. Guzman Chavez*, 594 U.S. 523, 528 (2021) (citing 8 U.S.C. § 1231(a)(2)).

After the 90-day removal period has expired and the noncitizen has not yet been removed, then the noncitizen is only subject to discretionary detention, meaning they "'may be detained' or may be released under terms of supervision." *Arteaga-Martinez*, 596 U.S. at 575 (quoting 8 U.S.C. § 1231(a)(6)). Two regulations govern ICE's decision on whether to continue the noncitizen's detention or to release them

2

on supervised release: 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13.[1] *Hall v. Nessinger*, No. 25-cv-667-JJM-PAS, 2026 WL 18583, at *2-4 (D.R.I. Jan. 2, 2026). These regulations also govern ICE's decision to revoke supervised release once it has been issued. *Id.* (citing 8 C.F.R § 241.4(*l*); 8 C.F.R. § 241.13(i)).

As relevant here, 8 C.F.R. § 241.13 specifically governs where ICE re-detains the noncitizen after they have been "issued a final order of removal, detained, and subsequently released on an OSUP." *Nguyen v. Hyde*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025). Under First Circuit precedent, the process for re-detaining the noncitizen in this context requires: "(1) an individualized determination (2) by ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (citing 8 C.F.R. § 241.13(i)(2)).

Per its own regulations, ICE must also: (1) notify the noncitizen "of the reasons for revocation"; (2) "conduct an initial informal interview promptly after ... return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification"; and (3) permit the noncitizen to "submit any evidence or information" to show that there is no "significant likelihood" of removal in the reasonably foreseeable future," or that the noncitizen "has not violated the order of supervision." *Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *4 (D. Md. Aug. 25, 2025) (quoting 8 C.F.R. § 241.13(i)(3)).

---

[1] The regulations differ in a few slight but important respects. For a more fulsome explanation of those distinctions, *see Hall*, 2026 WL 18583, at *2-4.

3

The procedures set forth in 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required. *See, e.g.*, *Jimenez v. Cronen*, 317 F. Supp. 3d 626, 655 (D. Mass. 2018) (citing Detention of Aliens Ordered Removed, 65 F.R. 80281–01, at 80283 (2000)). Therefore, ICE violates a noncitizen's due process rights when the agency re-detains them and fails to comply with these revocation procedures. *Id.* at 656-57; *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017); *Santamaria Orellana*, 2025 WL 2444087, at *5-6.

### B. Factual and Procedural History

Mr. Bulle is a native and citizen of Somalia. ECF No. 1 at 4. He came to the United States as a refugee in 1996. *Id.* at 1. In 2000, Mr. Bulle adjusted his status to that of a lawful permanent resident. *Id.* at 4; *see also* ECF No. 8-1 at 2.

On November 9, 2017, Mr. Bulle pleaded guilty to various drug trafficking offenses in Maine state court. ECF No. 1 at 4; ECF No. 1-3 at 1-3. He was sentenced to 9 months in jail. ECF No. 8-1 at 4.

On March 5, 2019, after he finished serving his sentence, ICE took Mr. Bulle into custody. *Id.* at 3. He was then placed into removal proceedings before the Boston Immigration Court, where he filed an application for asylum and withholding of removal. ECF No. 1 at 4.

The Immigration Judge ("IJ") found Mr. Bulle to be ineligible for these forms of relief due to his conviction for an aggravated felony under 8 U.S.C.

4

§ 1101(a)(43)(B).[2] *Id.* at 4-5. However, the IJ permitted Mr. Bulle to pursue relief under the Convention Against Torture ("CAT").[3] *Id.* at 5.

Prior to his CAT hearing, Mr. Bulle sought postconviction relief from his 2017 convictions on the ground of ineffective assistance of counsel. *Id.* On April 18, 2019, the Maine Superior Court found that "it appears from the face of the petition that [Mr. Bulle] satisfies the jurisdictional prerequisites and raises a cognizable ground for post-conviction review." *Id.; see also* ECF No. 1-4 at 3.

On June 27, 2019, the IJ presiding over Mr. Bulle's CAT hearing ordered him removed. ECF No. 1 at 5. However, the IJ found Mr. Bulle to be eligible for protection under CAT and granted him deferral of removal to Somalia. *Id.*

On August 30, 2019, after being detained for nearly 6 months, ICE released Mr. Bulle from custody on an OSUP. *Id.;* ECF No. 1-5 at 1-2; ECF No. 8-1 at 3. He remained on supervised release for more than 6 years.

Then, on December 12, 2025,[4] ICE officials re-detained Mr. Bulle in Lewiston, Maine. ECF No. 1 at 1, 5. They told him that his supervised release had been

---

[2] Noncitizens who are convicted of an "aggravated felony" are ineligible for asylum or withholding of removal. *See Enwonwu v. Gonzales*, 438 F.3d 22, 24 (1st Cir. 2006). Certain state drug offenses can be classified as "aggravated felonies" under the INA. *See Moncrieffe v. Holder*, 569 U.S. 184, 192 (2013).

[3] To succeed on a CAT claim, a noncitizen must show that it is "more likely than not that he … would be tortured if removed to the proposed country of removal." *DeCarvalho v. Garland*, 18 F.4th 66, 72 (1st Cir. 2021) (quoting 8 C.F.R. § 1208.16(c)(2)). If the noncitizen is granted CAT relief, then they may not be removed to the country where the torture occurred. *See* 8 C.F.R. § 208.17.

[4] In his declaration, Keith M. Chan, ICE's Assistant Field Office Director, contends that Mr. Bulle's re-detention occurred a day earlier, on December 11, 2025. ECF No. 8-1 at 4. However, in its briefing, the Government concedes that Mr. Bulle

5

revoked. ECF No. 1 at 5; ECF No. 8-1 at 4. ICE later transferred Mr. Bulle to the Donald W. Wyatt Detention Facility in Central Falls, Rhode Island. ECF No. 1 at 5.

It at this point that the parties' account of events differs. The Government claims that, upon ICE taking him into custody, ICE officials "orally informed [Mr. Bulle] concerning the revocation of his [OSUP]" and conducted an informal interview of him, where they explained the reasons for the revocation of his supervised release. ECF No. 8 at 1-2; ECF No. 8-1 at 4. Additionally, Keith M. Chan, ICE's Assistant Field Office Director, asserts in a declaration that ICE "issued a Notice of Revocation of Release for [Mr. Bulle]" on or about December 15, 2025. ECF No. 8-1 at 4.

Mr. Bulle disputes the Government's assertions and contends that he was never provided with an informal interview, nor did ICE officials ever notify him why his supervised release had been revoked. ECF No. 1 at 5. Mr. Chan concedes that ICE has been unable to locate its "Notice of Revocation of Release" in Mr. Bulle's immigration file. ECF No. 8-1 at 4.

Mr. Chan goes on to state that, "out of an abundance of caution," ICE officials "re-served" Mr. Bulle with the Notice of Revocation of Release on January 18, 2026. *Id.* Mr. Chan also attests that ICE officers conducted a second informal interview with Mr. Bulle. *Id.* It was at this time, Mr. Chan alleges, that ICE "afford[ed] [Mr. Bulle] an opportunity to respond to the stated reasons for revocation of the Order of Supervision," and that Mr. Bulle "did not provide any response." *Id.*

---

was detained on December 12, 2025. ECF No. 8 at 1. The Court will proceed under the assumption that Mr. Bulle's re-detention occurred on December 12, 2025.

Mr. Chan also acknowledges that ICE "is currently in the process of identifying a third country of removal" for Mr. Bulle. *Id.* He states that, on or about December 15, 2025, ICE officials asked Mr. Bulle to which third country he would prefer to be removed, and Mr. Bulle allegedly reported that he would be willing to be removed to Kenya. *Id.*

Since then, according to Mr. Chan, ICE officials have sought to remove Mr. Bulle to Kenya, Djibouti, Ethiopia, and Canada. *Id.* Mr. Chan concedes that, as of 2019, all four of these countries have declined to accept Mr. Bulle. *Id.* Nevertheless, Mr. Chan asserts that ICE has renewed its requests for travel documents from these countries, and that the agency "continues to seek a third country of removal for [Mr. Bulle]." *Id.*

Mr. Bulle filed the instant petition on January 12, 2026. ECF No. 1. He seeks release from ICE custody, arguing that the revocation of his supervised release and subsequent re-detention violate ICE's own regulations and his Fifth Amendment due process rights. *Id.* at 9-15. The Government objects to Mr. Bulle's petition and has asked the Court to deny it. ECF No. 8 at 1.

## II. DISCUSSION

### A. Does *Zadvydas* Apply?

The Government first argues that Mr. Bulle's detention is "presumptively reasonable" under *Zadvydas v. Davis*, 533 U.S. 678 (2001). ECF No. 8 at 1. As of its filing, the Government asserts that Mr. Bulle has been in custody for "only 40 days," and that his continued detention is justified because "the Supreme Court has held

7

that detention of six months is presumptively reasonable." *Id.* (citing *Zadvydas*, 533 U.S. at 701).  This argument misses the mark, however, because *Zadvydas* does not apply to Mr. Bulle's circumstances.

*Zadvydas* permits noncitizens to challenge their detention if they have been detained for longer than six months and can "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Guzman Chavez*, 594 U.S. at 529 (quoting *Zadvydas*, 533 U.S. at 701).  After this, "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701.

As a preliminary matter, Mr. Bulle has already been detained for more than six months.  After he finished serving his jail sentence, ICE took Mr. Bulle into custody on March 5, 2019.  ECF No. 8-1 at 3.  He was then detained for 178 days—close to six months—until ICE released him on an Order of Supervision on August 30, 2019.  *Id.*; *see also* ECF No. 1-5 at 1-2 (displaying OSUP from ICE); ECF No. 9 at 2. More than six years later, on December 12, 2025, ICE arrested and re-detained Mr. Bulle.  ECF No. 1 at 1, 5; ECF No. 8 at 1.  In total, Mr. Bulle has been in ICE custody for more than seven months and counting, meaning that his detention is *not* "presumptively reasonable" under *Zadvydas*.  533 U.S. at 701.

The Court finds it necessary to go into the particulars regarding Mr. Bulle's detention because the Government continues to advance a troubling argument.  Here, though it does not say so explicitly, the Government seems to suggest that the presumptively reasonable six-month clock restarted for Mr. Bulle once he was re-

8

detained by ICE. *See* ECF No. 8 at 1 ("[Mr. Bulle's] detention *as of December 12, 2025*, is presumptively reasonable … as his detention, as of this filing, has been only 40 days.") (emphasis added).

As this Court and other courts have stressed in recent months, the Government's position would effectively lead to indefinite detention because ICE could simply release a noncitizen on an OSUP and then restart the presumptively reasonable six-month detention period every time they re-detain the noncitizen. *See, e.g., Hall*, 2026 WL 18583, at *6; *Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025); *Villanueva v. Tate*, 801 F. Supp. 3d 689, 702 (S.D. Tex. 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 722 (W.D. Wash. 2025); *Aguilar v. Noem*, No. 25-cv-03463-NYW, 2025 WL 3514282, at *3 (D. Colo. Dec. 8, 2025). Such a position runs counter to *Zadvydas*, given the Supreme Court's outright rejection of indefinite detention in that case. *See* 533 U.S. at 690 (recognizing that the "indefinite detention" of a noncitizen "would raise a serious constitutional problem").

Accordingly, most courts to have considered the issue have concluded that the *Zadvydas* period is cumulative and, as a result, they have aggregated the noncitizen's periods of detention. *See, e.g., Siguenza*, 2025 WL 2734704, at *3 (collecting cases); *Phan v. Warden of Otay Mesa Detention Facility*, No. 25-cv-02369-AJB-BLM, 2025 WL 3141205, at *3 (S.D. Cal. Nov. 10, 2025) (collecting even more cases). To be sure, there are a few courts that have not followed this approach. *See Liu v. Carter*, 2025 WL 1207089, No. 25-3036-JWL, at *2 (D. Kan. Apr. 25, 2025) (holding that "the

9

removal-period clock restarts when [a noncitizen] subject to a removal order is again detained by ICE"); *Thai v. Hyde*, 788 F. Supp. 3d 57, 61 (D. Mass. 2025) (finding that noncitizen's previous ICE detention did not count towards the detention period). Nevertheless, to quote another court, this Court believes that "a uniform rule that counts and sums prior time in detention is appropriate. It is, after all, liberty at issue." *Abuelhawa v. Noem*, No. 4:25-cv-04128, --- F. Supp. 3d ----, 2025 WL 2937692, at *5 (S.D. Tex. Oct. 16, 2025).

There is yet another reason why *Zadvydas* does not apply to Mr. Bulle, which is that "this is not your typical first round detainment of [a noncitizen] awaiting removal." *Escalante v. Noem*, No. 9:25-cv-00182-MJT, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). Crucially, this case is *not* about the ability to detain in the first instance, as was the case in *Zadvydas*, but the ability to *re-detain* Mr. Bulle "after he was issued a final order of removal, detained, and subsequently released." *Nguyen*, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); *see also Nguyen v. Lyons*, No. 25-cv-631-MSM-PAS, 2026 WL 125093, at *2 (D.R.I. Jan. 16, 2026).

This distinction matters because, once supervised release is revoked and the noncitizen is detained, the burden is on the Government to show that, "on account of changed circumstances, there is a significant likelihood of [the noncitizen's] removal in the reasonably foreseeable future." *Hall*, 2026 WL 18583, at *6-7 (citing 8 C.F.R. § 241.13(i)(2)). The Government must also comport with its own procedural requirements for re-detaining the noncitizen. *See* 8 C.F.R. § 241.13(i)(3). The Court

10

will now shift its focus to reviewing whether the Government has complied with these requirements.

### B.   Application of 8 C.F.R. § 241.13

#### 1.   Whether ICE Afforded Mr. Bulle Meaningful Notice and an Opportunity to Be Heard

Key issues in this case are whether ICE timely notified Mr. Bulle of the revocation of his supervised release, and whether the agency afforded him a prompt, informal interview upon his return to ICE custody. ICE must follow both procedures, pursuant to its own regulations. *See* 8 C.F.R. § 241.13(i)(3)). Specifically, the regulation provides that, "[u]pon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release." *Id.* It also states that ICE "will conduct an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification" and an opportunity to "submit any evidence or information" against their re-detention. [5] *Id.*

As mentioned, ICE promulgated this regulation to provide noncitizens with the fundamental due process protections that courts have found to be constitutionally required. *Jimenez*, 317 F. Supp. 3d at 655; *see also Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224, 226 (D. Mass. 2025) ("Noncitizens, even those subject to a final removal order, are entitled to due process."). "[T]he essential requirements of procedural due

---

[5] The regulation refers to the "Service," meaning the Immigration and Naturalization Service ("INS"). However, this agency was abolished under the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2205 (2002). INS's immigration enforcement functions were later transferred to ICE, which is a component of DHS. *See* 6 U.S.C. §§ 251, 291(a).

11

process include adequate notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Aponte-Rosario v. Acevedo-Vila*, 617 F.3d 1, 9 (1st Cir. 2010) (quoting *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990)); *see also Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("The fundamental requisite of due process of law is the opportunity to be heard."). Therefore, the notice and interview requirements of 8 C.F.R. § 241.13(i)(3) play an important role in safeguarding noncitizens' due process rights. *See M.S.L. v. Bostock*, No. 6:25-cv-01204-AA, 2025 WL 2430267, at *11 (D. Or. Aug. 21, 2025); *Tran v. Noem*, No. 3:25-cv-02391-BTM-BLM, 2025 WL 3005347, at *3 (S.D. Cal. Oct. 27, 2025).

### i. Notice Requirement

Here, Mr. Bulle calls into question ICE's compliance with the notice requirement, alleging in his petition that he was never notified of the reason for the revocation of his supervised release. ECF No. 1 at 5. The Government contends that ICE officials "orally informed [Mr. Bulle] concerning the revocation of his Order of Supervision." ECF No. 8 at 1. Mr. Chan also states in his declaration that ICE's "Acting Field Office Director issued a Notice of Revocation of Release for [Mr. Bulle]" on or about December 15, 2025. ECF No. 8-1 at 4. However, neither of these carefully worded sentences makes clear whether Mr. Bulle *received* the Notice of Revocation of Release or any explanation for why he was being re-detained.

Curiously, Mr. Chan concedes that ICE has been "unable to locate" its "previously signed" Notice of Revocation of Release in Mr. Bulle's immigration file. ECF No. 8-1 at 4. Mr. Chan goes on to state that, "out of an abundance of caution,"

12

ICE officials "personally re-served" Mr. Bulle with the Notice on January 18, 2026, almost a month and a half after he had been re-detained. *Id.* But if Mr. Bulle had to be "re-served" with notice, then it stands to reason that ICE deprived him of the ability to "respond to the reasons for revocation stated in the notification" during his initial informal interview. 8 C.F.R. § 241.13(i)(3).

Mr. Bulle points out another problem: the Government has presented *neither* of these alleged Notices to the Court to show compliance with the notice requirement. *See* ECF No. 9 at 3. Because of this omission, the Court cannot evaluate what basis, if any, was provided to Mr. Bulle regarding the revocation of his supervised release. *See Santamaria Orellana*, 2025 WL 2444087, at *8 ("[T]here is absolutely no record of the decision to revoke [Petitioner's] release … which reveals an even more significant due process problem because no one … knows with any degree of certainty what legal and factual basis was relied upon in making the determination, which hinders any meaningful challenge to the decision."); *Hamidi v. Bondi*, No. CIV-25-1205-G, 2025 WL 4034263, at *5 (W.D. Okla. Nov. 14, 2025) ("Respondents have not presented the court with a copy of the 2025 Notice of Revocation of Release, which should have been provided to Petitioner and stated the reasons for revocation of release."). Suffice it to say, the Court can conclude that ICE failed to provide Mr. Bulle with meaningful notice.

### ii.     Interview Requirement

There is also some doubt as to whether ICE complied with the interview requirement. Mr. Bulle contends that, after he was re-detained by ICE, he was not provided an initial informal interview, nor was he given the opportunity to present evidence against his detention. ECF No. 1 at 5, 11. Mr. Chan counters, arguing that an ICE officer did conduct an informal interview with Mr. Bulle as soon as he was re-detained and "afford[ed] him the opportunity to respond to the reasons for his re-detention." ECF No. 8-1 at 4. However, this claim is immediately undermined by Mr. Chan's own admission that ICE, "out of an abundance of caution," conducted a *second* interview with Mr. Bulle on January 18, 2026, "thereby affording [him] an opportunity to respond to the stated reasons for revocation of the Order of Supervision." *Id.*

Two questions naturally arise out of this admission, neither of which helps the Government's position. If the first interview afforded Mr. Bulle the opportunity to respond to the reasons for his re-detention, then why was the second interview necessary? The answer is likely that the first interview did not provide Mr. Bulle with an adequate opportunity to be heard.

The next question then becomes, if the second interview is the one that afforded Mr. Bulle the opportunity to respond to the reasons for his re-detention, then why did it occur almost a month and a half after he was re-detained? Recall that ICE is required to conduct this interview "promptly." 8 C.F.R. § 241.13(i)(3). An interview that occurs nearly a month and a half into re-detention is certainly not a prompt one.

14

*See M.S.L.*, 2025 WL 2430267, at *11 (finding an informal interview given 27 days after petitioner was taken into ICE custody "cannot reasonably be construed as ... prompt" and granting habeas petition); *Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *5 (E.D. Cal. Aug. 10, 2025 (finding that ICE's "failure to provide an informal period during that lengthy [two-month] period ... renders petitioner's re-detention unlawful").

***

Accordingly, on the record before it, the Court concludes that ICE failed to comply with both the notice and the interview requirements set forth in 8 C.F.R. § 241.13(i)(3). This in turn deprived Mr. Bulle of a meaningful opportunity to be heard, in violation of his due process rights. *See Niz-Chavez v. Garland*, 593 U.S. 155, 172 (2021) ("If men must turn square corners when they deal with the government, it cannot be too much to expect the government to turn square corners when it deals with them.").

But even if ICE *did* meet its procedural requirements under 8 C.F.R. § 241.13(i)(3), the Court is still not convinced that the Government is capable of demonstrating that circumstances have changed such that there is now a significant likelihood that Mr. Bulle will be removed to a third country in the reasonably foreseeable future, as is its burden under 8 C.F.R. § 241.13(i)(2).

### 2. Whether There Were "Changed Circumstances" in Mr. Bulle's Case

As a refresher, ICE's decision to re-detain a noncitizen who has been granted an Order of Supervised Release requires: "(1) an individualized determination (2) by

15

ICE that, (3) based on changed circumstances, (4) removal has become significantly likely in the reasonably foreseeable future." *Kong*, 62 F.4th at 619-20 (citing 8 C.F.R. § 241.13(i)(2)). ICE is tasked with making "the required individualized finding" of the reasonably foreseeable removal. *Id.* at 620. A court can review that finding "in light of the regulations instructing ICE on how it should make such a determination." *Id.* (citing 8 C.F.R. §§ 241.13(f), (i)(2)).

Here, the only reasoning that the Government provides for re-detaining Mr. Bulle is that "ICE [seeks] to enforce the removal order and remove him to a third country." ECF No. 8-1 at 4. Recall that Mr. Bulle cannot be sent back to Somalia because an IJ has granted him deferral of removal to that country under CAT. ECF No. 1 at 5.

As such, Mr. Chan asserts in his declaration that ICE seeks to remove Mr. Bulle to Kenya, Djibouti, Ethiopia, and Canada. ECF No. 8-1 at 4. He acknowledges, however, that all four of these countries have declined to accept Mr. Bulle as of 2019. *Id.* Despite that, Mr. Chan claims that "international relations and country conditions have significantly changed since that time," and that ICE has therefore renewed its requests to remove Mr. Bulle to one of these third countries. *Id.* According to Mr. Chan, these requests "remain pending." *Id.*

This falls woefully short of constituting "changed circumstances" under the regulation. That ICE is actively seeking to remove Mr. Bulle to a third country does not mean that his removal is significantly likely to occur in the reasonably near future, especially given that no third country has actually agreed to accept him. *See*

16

*Yee S. v. Bondi*, No. 25-CV-02782 (JMB/DLM), --- F. Supp. 3d ----, 2025 WL 2879479, at *5 (D. Minn. Oct. 9, 2025) (finding that ICE failed to meet its burden of showing changed circumstances where it could not identify any progress made toward removal since detention began or any country willing to accept the petitioner). Instead, nearly a month and a half into his re-detention, ICE acknowledges that Mr. Bulle's removal remains a work in progress. *See* ECF No. 8-1 at 4 ("ICE ERO continues to seek a third country of removal for [Mr. Bulle]."); *see also* ECF No. 8 at 1 ("[T]he government is actively working to obtain travel papers for [Mr. Bulle].").

But the Government does not even estimate how long it will take ICE to obtain such third-country approval, let alone how long it will take the agency to secure travel documents for Mr. Bulle from that country. *See Nguyen*, 2026 WL 125093, at *4 ("The Respondents have presented nothing from which this Court can even begin to estimate the length of time the document processing may take."); *Hamidi*, 2025 WL 4034263, at *6 ("Respondents' contention that Petitioner could be removed to a third country 'at some point in the future' … does not establish a reasonable timeline.").

Nor has the Government pointed to anything concrete that has changed since ICE last tried—and failed—to remove Mr. Bulle to the third countries on its list. *See Roble v. Bondi*, No. 25-cv-3196 (LMP/LIB), --- F. Supp. 3d ----, 2025 WL 2443453, at *5 (D. Minn. Aug. 25, 2025) ("[T]he Government … fails to show why [petitioner's] removal to a third country is more likely in the reasonably foreseeable future, especially given that ICE was previously unable to remove [petitioner] to a third country in 2019."); *Sun v. Noem*, No. 3:25-cv-02433-CAB-MMP, 2025 WL 2800037, at

17

\*2 (S.D. Cal. Sept. 30, 2025) (finding that ICE could not meet its burden under 8 C.F.R. § 241.13(i)(2) where there were "no facts or argument about what has changed since ICE's previous two failed attempts to remove Petitioner in the last two decades").

The Government has not even indicated whether any of the third countries are in receipt of or have responded to ICE's renewed requests. *See Nguyen*, 788 F. Supp. 3d at 152 (holding that the Government failed to prove "changed circumstances" where no information in the record showed whether ICE's intended country of removal "has even acknowledged receipt of the request or otherwise responded to [the] request" for travel documents).

In essence, that the Government asserts without evidence that it is "actively working to obtain travel papers" for Mr. Bulle's removal to a third country is not enough to justify the revocation of his supervised release and his subsequent re-detention. Indeed, in recent months, courts across the country have reached the same result in factually similar cases. *See, e.g.*, *Aguilar*, 2025 WL 3514282, at \*6 (rejecting the Government's claim of "changed circumstances" on the mere basis that ICE is "pursuing third country removal options"); *Balouch v. Bondi*, No. 9:25-cv-00216-MJT, 2025 WL 2871914, at \*3 (E.D. Tex. Oct. 9, 2025) (same); *Momennia v. Bondi*, No. CIV-25-1067-J, 2025 WL 3011896, at \*10 (W.D. Okla. Oct. 15, 2025) (same); *Ahrach v. Baltazar*, No. 25-cv-03195-PAB, 2025 WL 3227529, at \*5 (D. Colo. Nov. 19, 2025) (same); *Faysal N. v. Noem*, No. 25-CV-04641 (JMB/DLM), 2026 WL 36066, at \*5 (D. Minn. Jan. 6, 2026) (same). "[A]kin to promising the check is in the mail," these kinds

18

of vague assertions by the Government are insufficient to meet the requirement that there be "a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." *Sun*, 2025 WL 2800037, at *2 (citing 8 C.F.R. § 241.13(i)(2)). Simply put, the Government fails to show that Mr. Bulle's removal is any more likely today than it was back in 2019.

### 3. Remedy

To summarize, ICE failed to: (1) provide Mr. Bulle with adequate notice and an opportunity to be heard; and (2) make an adequate showing of "changed circumstances" in Mr. Bulle's case. Taken together, its decision to revoke Mr. Bulle's supervised release and re-detain him is not in compliance with 8 C.F.R. § 241.13(i)(2) and 8 C.F.R. § 241.13(i)(2), and ICE has violated his due process rights in the process.

It should almost go without saying that "ICE, like any agency 'has the duty to follow its own federal regulations.'" *Rombot*, 296 F. Supp. 3d at 388 (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). "These procedures are not optional or discretionary; they must be followed, and failure to do so renders the detention unlawful." *Delkash v. Noem*, No. 5:25-cv-01675-HDV-AGR, 2025 WL 2683988, at *6 (C.D. Cal. Aug. 28, 2025). Indeed, several courts have found that when ICE fails to follow its own regulations in revoking release, the proper remedy is to order the noncitizen's release. *See, e.g., Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases).

Given these regulatory and constitutional violations, the Court finds that Mr. Bulle's immediate release is appropriate. Mr. Bulle's release will be subject to the

conditions of his preexisting Order of Supervision.  *See Nguyen*, 788 F. Supp. 3d at 153 (ordering similar relief); *Hall*, 2026 WL 18583, at *9 (same).

## III. CONCLUSION

Accordingly, the Court GRANTS Mr. Bulle's habeas petition.  ECF No. 1.  The Court ORDERS the Government to **release Mustafa Bulle immediately**, subject to the conditions of his preexisting Order of Supervision.

Per its request, the Government is permitted to transfer Mr. Bulle to Burlington, Massachusetts to process his release and to allow for the return of his property.  ECF No. 8 at 2.  However, effectuating this transfer shall not in any way impede Mr. Bulle's **immediate release**.[6]

IT IS SO ORDERED.

*s/John J. McConnell, Jr.*

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
JOHN J. MCCONNELL, JR.
Chief Judge
United States District Court

January 23, 2026

---

[6] The Government also asks the Court to permit it to place "any monitoring equipment deemed appropriate."  ECF No. 8 at 2.  However, because Mr. Bulle is subject to the conditions of his preexisting OSUP, and there is no indication that monitoring equipment was placed on him as part of that preexisting OSUP, this part of the Government's request is DENIED.